FILED

AO-106 (Rev. 06/09)-Application for Search Warrant

JUN 13 2025

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of **Information Associated with Facebook User ID alex.goins.481906 that is Stored at a Premises Controlled by Meta Platforms, Inc.** | )   )   )   )   ) |

Case No.  25-mJ-520-SH

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A." This court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).
located in the ___Northern___ District of ___California___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **18 U.S.C. § 2422(b)** | **Attempted Coercion and Enticement of a Minor** |

The application is based on these facts:
**See Affidavit of Federal Task Force Agent Benjamin Wolery, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Benjamin Wolery, Task Force Agent, HSI
*Printed name and title*

Subscribed and sworn to by phone.

Date:  6/13/25

*Judge's signature*

City and state:  Tulsa, Oklahoma

Susan E. Huntsman, U.S. Magistrate Judge
*Printed name and title*

## Affidavit in Support of an Application for a Search Warrant

I, Federal Task Force Agent Benjamin Wolery, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for information associated with the Facebook account User ID **alex.goins.481906** that is stored at a premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government information (including the content of communications) in its possession, pertaining to the subscriber or customer associated with the User ID **alex.goins.481906**, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers

authorized by the Attorney General to request such a warrant. I have been employed as an investigator for the City of Owasso Police Department ("OPD") since 2008. I hold the rank of Detective and am presently assigned to the Criminal Investigation Division of OPD. The Criminal Investigation Division is responsible for the general investigation of crimes that occur within the City of Owasso. In this regard, I predominantly handle matters that involve crimes against children and sex crimes. I hold a Bachelor of Science degree from the University of Oklahoma, and was trained by the State of Oklahoma Council on Law Enforcement Education and Training Basic Police Academy. I also hold an Advanced Law Enforcement Certification and separately obtained a CSI Crime Scene Certification through Northeastern State University and the Oklahoma State Bureau of Investigation. Throughout my career, I have investigated countless matters involving child abuse and neglect, sexual abuse, and exploitation. Through a hybrid of experience and training, I am familiar with tactics used and items employed by those engaged in crimes against children and sexual abuse. Additionally, I have worked and am presently working as a federal task force officer with Homeland Security Investigations ("HSI"). I will serve in this capacity until August 12, 2030.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events

2

and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe the identified Facebook account contains evidence, instrumentalities, contraband, and/or fruits of violation of Title 18, United States Code, Section 2422(b) (Attempted Coercion and Enticement of a Minor) by Alexander Goins.

## Jurisdiction

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Meta from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate,

3

where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## Meta Background

7. Meta owns and operates Facebook, a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

8. Meta asks Facebook users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

9. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's

4

account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

10. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

11. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user

5

and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

12. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other Facebook users in a photo or video and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

13. Facebook users can use Facebook Messenger to communicate with other users via text, voice, and video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats, including the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

14. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

15. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

6

16. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

17. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

18. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

19. In addition to the applications described above, Meta provides users with access thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

20. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

7

21. Meta retains location information associated with Facebook users under some circumstances, such as if a use enables "Location History," "checks-in" to an event, or tags a post with a location.

22. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Meta typically retains records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

23. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant

8

at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

24. Therefore, Meta's servers are likely to contain all the material described above, including stored electronic communications and information concerning

subscribers and their use of Facebook, such as account access information,
transaction information, and other account information.

25. I previously requested that Meta preserve any information for the accounts
listed in Attachment A.

## Probable Cause

26. As part of my role investigating internet crimes committed against children, I
maintained a Facebook account bearing a 13-year-old female persona ("BC13").

27. On May 9, 2025, BC13 received a private message from a Facebook account,
User ID **alex.goins.481906**, bearing the name Alex Goins ("Alex"). Alex messaged
BC13, "Hey". The following day, BC13 responded, "Gm". Alex and BC13 had a
brief conversation in which Alex told BC13 that he was going for a ride on his
bicycle.

28. On May 13, 2025, Alex asked, "How old are you"? BC13 responded, "13 u?"
Alex replied, "I'm way to old to be talking about to you I'm so sorry. Young lady.
Please forgive me." BC13 stated, "I understand. No worries. Most guys stop taking
to me when I tell them my age. Take care."

29. On May 23, 2025, Alex re-initiated messaging with BC13. Alex asked, "So
just wondering what you would do next. Just say keep talking.? To an older guy".
BC13 replied, "Prolly". Alex and BC13 conversation continued. BC13 told Alex she
enjoyed horseback riding, swimming and theater arts.

30. On May 24, 2025, Alex asked, "So can you prove your age. Just wanted to". BC13 asked, "How so?" Alex responded, "Not sure really. School id. And what grade u in. lol just wondering.." BC13 replied, "I just finished the 8th grade and I'm homeschooled." Alex made two statements which were deleted prior to them being memorialized. BC13's responses to the statements were, "Then stop talking to me" and "Ur choice". Alex responded, "Lol see I'll talk to u as long as you can keep secret we're good". Alex and BC13's conversation continued and they discussed their physical characteristics. During this conversation, Alex requested a digital image of BC13's abdomen and transmitted digital images of his own. BC13 stated, "I'm don't feel comfortable sending those pictures yet. I will send u a bikini pic from last year if u want". Alex responded to the digital image, "This is going to bad to say on my part. But holy smokes. Girl." Furthermore, Alex stated, "……The ways I'd love to safely [softly] rub you up and down with your choice of either body lotion baby oil whatever it would be I would do it." Alex expressed his loss for appropriate words when talking to BC13 due to BC13's potential lack of knowledge and experience.

31. Alex and BC13's conversation then became sexual in nature after Alex stated, "…. Yes not going to lie I'd do things with you. That. Just say not PG-13…." Alex stated, "If I had the chance I'd pick you up lay you down kiss you from nake to the top of your belly button stop look up at you so are eyes would lock. Then I'd keep going down and slowly pull your pants off. And then id kiss you right above. The top

11

of your panties before I took them off and then I'd spend the next 25 minutes or more with my face in between your legs." BC13 asked, "U don't think u will be turned off from my age?" Alex replied, "I don't think it would. As long as you were ok with I was doing. And as long you don't ask me to stop or say no about anything. Please don't tell anyone I said any of this stuff. But yes I would most definitely. Step over that line. With you. And be the first person to be given permission to do that to you." At the end of the conversation, Alex requested to transition the conversation to the Teleguard application because "it's pretty much an app that don't trace phone numbers and stuff like that that is safe for us to talk." Alex and BC13 exchanged Teleguard IDs.

32. Alex and BC13's conversation ensued on Teleguard and they discussed their plans for Memorial Day weekend, Alex's previous relationship, and Alex's six-year-old daughter.

33. On May 25, 2025, Alex and BC13 discussed Alex's employment, daughter, and their favorite foods. Alex stated, "Yeah I would love to be able to take you out and get you some food. I really would like to meet you." BC13 replied, "I would like that."

34. On May 26, 2025, Alex stated, "Like we can meet whenever your ready.. I'm so ready to meet you." Alex and BC13 discussed their day's activities.

35. On May 27, 2025, Alex and BC13 discussed Alex's mother's employment, Alex's daughter, and BC13's mother's employment schedule. Alex reiterated, "I

would love the chance to meet you if you would like." Alex and BC13 discussed what would happen if/when they met. Alex stated, "Well I would be ok with just talking to you or maybe picking up wrapping your legs around my waste. Looking you in the eyes id slowly come in for a kiss. Nothing big are anything just a few seconds." BC13 replied, "It would be amazing."

36. Alex continued, "So you wouldn't stop me from doing that. Huh ok so what if after I was to kiss you I'd carry you to your room lay you down on your bed. Kiss you again then start kissin your neck and chest down to your belly button. And right before I got it to your waistline I'm going to stop and go to either side and slowly nibble on you just to watch your laughing giggle." BC13 asked, "Why would u torture me like that"? Alex responded, "Torture? What part. No way because after that I'm working my way back up to your lips until are eyes meet and lock together. I'll use are body's to rub against each other so that we bout feel every thing as hopefully by this time you have let me pull down your panties. So I could eat you out for at least a 35 40 minutes. And if you wanted to keep going. Well you'll have to take over and tell me either to stop or keep going on. And that point were both fully naked together rub it up and down. And watch as your eyes would slowly close because you. Have cumed."

37. Alex then expressed his desire to meet BC13, "Man I wish I could get there tonight I mean I could but it be after I get the car and that like at I have no idea. I'll see what time I'll have the car and if you want me to I'll drive to you. Later tonight.

13

And well you know the rest of the plan." Alex and BC13 agreed to meet that night at approximately 0100 CDT at 14505 East 86th Street, Owasso, Tulsa County, Oklahoma. BC13 requested, "Will you bring a condom?" Alex stated he would arrive in a "grayish blue" "Chevy Cruze". As Alex and BC13 made their final arrangements, Alex stated, "Iv always want to sleep with a younger girl. Didn't think it be 13. But. I don't care not more at this point I'm all in and don't want to talk to no one else. But you your on my mind non stop. And u can't wait….. Me either babe girl. Just wait I well do all the stuff I said I would do to you. And I wouldn't think twice about it. I can't wait to see your faces. After the first time you get ate out."

38. On May 28, 2025, BC13 conducted an audio call with Alex in which Alex reiterated his intent to attend their meeting. At 0253 CDT, Alex texted BC13, "I'm here I'm so nervous." Officers observed a vehicle matching the description given by Alex at the specified location in Owasso, Oklahoma, within the Northern District of Oklahoma. After the vehicle parked, Officers converged on the vehicle and had the driver—Alex (later identified as Alexander Goins)—exit the vehicle. Officers arrested Alex and seized his cellular phone. In addition, Officers located condoms in a backpack found in the backseat of Alex's vehicle.

39. On May 29, 2025, I submitted a preservation request to Meta concerning the Facebook account bearing User ID **alex.goins.481906** and requested the maintenance of records for a minimum of 90 days.

14

## Information to be Searched and Things to be Seized

40. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

41. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

42. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and

15

similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

## Conclusion

43. Based on the information above, I submit that there is probable cause to believe that there is evidence of violations of Title 18, United States Code § 2422(b) (Attempted Coercion and Enticement of a Minor) associated with the Facebook account described in Attachment A.

44. I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Benjamin Wolery
Task Force Agent/Detective
HSI/OPD


Subscribed and sworn to by phone on June 13, 2025.

SUSAN E. HUNTSMAN
UNITED STATES MAGISTRATE JUDGE

17

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Facebook account name "Alex Goins" and Facebook ID alex.goins.481906 that is stored at a premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

A. All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

2.    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

rejected "Friend" requests; comments; gifts; pokes; tags; and
information about the user's access and use of Facebook applications;

3. All records or other information regarding the devices and internet
browsers associated with, or used in connection with, that user ID,
including the hardware model, operating system version, unique device
identifiers, mobile network information, and user agent string;

4. All IP logs, including all records of the IP addresses that logged into the
account;

5. The length of service (including start date) and the means and source of
any payments associated with the service (including any credit card or
bank account number);

6. All privacy settings and other account settings, including privacy
settings for individual Facebook posts and activities, and all records
showing which Facebook users have been blocked by the account;

7. All past and present lists of friends created by the account;

8. The types of service utilized by the user;

9. All associated logs and metadata;

B. All content, records, and other information relating to communications sent
from or received by the Account from 05/09/2025 to present, including but not
limited to:

2

1.      The content of all communications sent from or received by the

        Account, including direct and group messages, and all associated

        multimedia and metadata, including deleted and draft content, if

        available;

2.      All activity logs for the account and all other documents showing the

        user's posts and other Facebook activities from 05/09/2025 through

        05/24/2025.

3.      All photos and videos uploaded by that user ID and all photos and

        videos uploaded by any user that have that user tagged in them from

        05/09/2025 through 05/24/2025, including Exchangeable Image File

        ("EXIF") data and any other metadata associated with those photos

        and videos;

4.      All other records and contents of communications and messages made

        or received by the user from 05/09/2025 through 05/24/2025,

        including all Messenger activity, private messages, chat history, video

        and voice calling history, and pending "Friend" requests;

5.      All "check ins" and other location information;

6.      All records pertaining to communications between Meta and any

        person regarding the user or the user's Facebook account, including

        contacts with support services and records of actions taken;

3

C. All content, records, and other information relating to all other interactions between the Account and other Facebook users from 05/09/2025 through 05/24/2025, including but not limited to:

1.  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

2.  All information about the user's access and use of Facebook Marketplace;

3.  All information about the Facebook pages that the account is or was a "fan" of;

D. All records of Facebook searches performed by the account from 05/09/2025 through 05/24/2025;

E. All location information, including location history, login activity, information geotags, and related metadata from 05/09/2025 through 05/24/2025.


Meta is further ordered to disclose the above information to the government within **14 days** after service of this warrant.

4

**II.    Information to be searched for and seized by the government**

All information described above in Section I that constitutes evidence, instrumentalities, contraband, and/or fruits of violations of Title 18, United States Code § 2422(b) (Attempted Coercion and Enticement of a Minor), including, for each account or identifier listed on Attachment A:

a.  Communications between the user ID and others from 05/09/2025 through 05/24/2025 pertaining to the enticement or coercion of minors to engage in sexual acts or sexual conduct, as defined in 18 U.S.C. 2422(b);

b.  Evidence indicating how and when the Facebook account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c.  Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

d.  The identity of the person(s) who created or used the user ID.

## <u>Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta") and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____

_____

_____

_____

associated with the Facebook account name **"Alex Goins"** and Facebook ID **alex.goins.481906**. I further state that:

a.    All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

6

b.    Such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.    The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.    The process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                             Signature

7